IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-6010-CR-SJ-DGK |
| | ) | |
| JEREMY A. MITCHELL, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is defendant Jeremy A. Mitchell's motion to suppress evidence. (Doc. 23). The Government has filed suggestions in opposition. (Doc. 24). A hearing was held on the motion during which the parties presented evidence. (Doc. 35). Defendant Jeremy Mitchell was charged on August 29, 2017, in a one-count indictment with felon in possession of a firearm (Count 1). Defendant Mitchell's motion to suppress argues that the warrantless entry into the residence of 212 Texas Avenue, resulting in the evidence used in prosecution of him for possession of a firearm in this case, violated his Fourth Amendment rights. Defendant Mitchell argues that all physical evidence and any related testimony that was obtained as a result of the warrantless entry into the residence must be suppressed.

## Statement of Facts

On December 5, 2016, Stephen Clark an investigator with the Buchanan County Drug Strike Task Force received information from a concerned citizen regarding the location of Justin C. Lay. Lay had two active arrest warrants in Buchanan County, one of which was a felony warrant. Investigator Clark had been involved in investigating Lay prior to this date, during which time a controlled buy of methamphetamine was made from Lay and surveillance of Lay was also conducted. Based on the prior investigation Officer Clark knew Lay by appearance, and knew he was likely in possession of a firearm and methamphetamine, and involved in the sale of methamphetamine. Investigator Clark had previously attempted to arrest Lay on his outstanding warrants, but Lay had not been apprehended. Law enforcement had been unable to arrest Lay because Lay would flee the scene erratically in his vehicle causing danger to the public, and thereby causing officers to not pursue him when he fled.

On the evening of December 5, 2016, Investigator Clark received information from a concerned citizen that Lay was at the residence of 212 Texas Avenue. The concerned citizen gave a physical description of Lay and stated he was wearing a red shirt with a black hoodie underneath. The concerned citizen was providing information to Investigator Clark as to Lay's comings and goings from the 212 Texas Avenue residence.[1] The concerned citizen reported that with Lay was an unknown white male wearing a plaid jacket (later identified as Jeremy Mitchell). Both Lay and the unknown male wearing the plaid jacket (Mitchell) were reported to have firearms.

Investigator Clark called for a briefing with other investigators around 9:30 p.m. on December 5, 2016, for the purpose of planning an attempt to arrest Lay that evening on his outstanding arrest warrants. The plan was to surveille the residence of 212 Texas Avenue and when Lay was seen coming outside, the investigators would let Lay get a few steps away from the residence, but not near his vehicle, at which time they would attempt to take him into custody. The investigators had no plan to enter the residence at 212 Texas Avenue in attempt to arrest Lay on his active warrants. The basis for the plan were the investigators lack of first-hand knowledge that Lay was inside the residence at 212 Texas Avenue, safety concerns related to Lay being known to erratically flee in his vehicle, and knowledge that Lay was likely armed. Investigator Clark had specific information on this date that Lay and the unknown male with him (Mitchell) were armed inside the residence at 212 Texas Avenue.

The investigators arrived at the area of 212 Texas Avenue, around 9:40 p.m. The residence was the left side of a duplex. Parked in front of the residence was a green Chevy Blazer that Officer Clark recognized as the vehicle Lay was known to drive. The investigators set up surveillance at different locations around the area of the residence in order to be able to see when Lay exited the residence. One officer, Captain Collie, was situated to the North East of the residence parked in a parking lot; another officer, Investigator Terry White, was situated to the South of the residence at the back; and four officers were in a vehicle parked just down the block from the residence. The four officers in the vehicle in the front of the residence were the arrest team, and included Officer Stephen Clark, Investigator Josh Hewitt, Investigator Mike Smith, and Investigator Chris Brinton.

---

[1] Concerned citizen was identified at the hearing by name and was identified as the neighbor who lived in the adjacent duplex to the right of Lay's location at 212 Texas Avenue.

At about 10:42 p.m. the investigators in the vehicle parked on the street near the front of the residence noticed some movement from the duplex's left front door. The investigators were able to see the front door area of the duplex as the front porch light was turned on and a street light was also illuminating the duplex. Investigator Clark could see a white male opening the front door of the duplex and walking outside. The white male could be seen wearing a red shirt with a black hoodie underneath of it, and Investigator Clark recognized Lay's face based on past investigations involving Lay. Investigator Clark was able to identify the white male exiting the residence as Justin Lay. After exiting the duplex, Lay walked out of the yard and then got on the sidewalk and started to proceed to the East.

At this point, because Lay had exited the residence and had walked in a direction away from his vehicle, the investigators decided to attempt to take Lay into custody. The investigators exited the vehicle and said "Police. Don't move." The investigators were wearing vests clearly marked "Sherriff" on the front and back and displayed a Deputy Sherriff's badge. Investigator Clark observed Lay turn his head back to look at the investigators and then make an abrupt movement with his right hand to the side and then continue to walk down the sidewalk to the East. The extension of Lay's arm and hand to the right gave investigator Clark the impression that Lay might have been throwing an object to the right of him. Lay ultimately stopped and complied with the investigators directives and was taken into custody. Lay was promptly searched incident to arrest and nothing was found on his person. Investigators had information that Lay had a pink firearm but it was not found. While Lay was being arrested he started a commotion. This commotion delayed the investigators from searching the area near where Lay was arrested and where he was seen making an arm motion like he might be throwing an object.

Lay started a commotion following his arrest by continually yelling back toward the duplex, from which he had just exited. Lay was yelling the name "Tiffany" over and over. The investigators believed that Lay was trying to alert somebody in the duplex of his arrest and possibly seek the assistance of a person in the duplex who may have a weapon. The investigators did have information that inside the duplex with Lay there was likely a white male wearing a plaid jacket (Mitchell) that had a firearm. The investigators had also not found the pink firearm that Lay was reported to have had, and so there was also concern that this firearm might still be in the duplex. Out of concern for their safety, along with the thought they might be able to get consent to search the duplex, Investigators Clark, Brinton and Collie went up onto the

front porch of the duplex and knocked on the front door in an attempt to make contact with whoever was still inside (known as a knock and talk). Investigators Smith and Hewitt stayed out in the street area with Lay. On the front porch of the duplex Captain Collie knocked on the front door and a male voice from inside the residence said "Who is it?" Captain Collie responded "Police". Shortly thereafter, the door to the duplex was partially opened by a white male wearing a plaid jacket (Mitchell). Based on past experience/dealings Officer Clark recognized the white male in the plaid jacket as Jeremy Mitchell. Captain Collie, however, was not familiar with Mitchell. Investigator, Captain Collie, began a conversation with Mitchell there at the door, but the conversation was interrupted. As Captain Collie started to introduce himself, there was a second white male subject (later identified as Joshua Mack) behind Mitchell who looked over Mitchell's shoulder and yelled "Cops". This second white male subject, Mack, then took off running toward the back of the residence. The actions of Mack caused Captain Collie to feel threatened and Captain Collie reacted by stepping into the residence and moving past Mitchell yelling "Police Stop" at Mack, as Mack ran to the back of the residence. Captain Collie testified that he entered the residence and gave chase to the second male subject, Mack, because he was concerned that he was running to get a gun. Captain Collie testified that at the time the investigators had information that at least one and maybe two firearms were inside the residence.

When Captain Collie gave chase to the second male subject, Mack, he chased him through the living room and dining room type area and through the kitchen, which were all open rooms, and caught up with Mack at the back of the kitchen. Captain Collie ordered Mack to the ground. Mack laid on the ground on his stomach but kept trying to reach into his waistband area. At that time Captain Collie had drawn his gun and was telling Mack to show his hands. Mack started to show his hands and then started reaching for his waistband again. It was at this point that Investigator Brinton got to the kitchen and helped handcuff Mack. Mack was checked for warrants and was patted down for weapons. It was confirmed that Mack had a felony parole violation warrant.

When Captain Collie gave chase after Mack through the residence, Investigators Clark and Britton had stepped into the residence for safety purposes and to assist Captain Collie. Once inside the residence the investigators saw two female individuals and a child. One of the females was later identified as Tiffany Peterson. Investigator Britton followed Captain Collie to the back of the residence to assist. Investigator Clark stayed at the front of the residence. Investigator

Clark recognized Mitchell as being the white male wearing a plaid jacket that had been identified by the concerned citizen as being with Lay that day and as having a firearm. Out of concern that Mitchell had a gun, Investigator Clark instructed Mitchell to show his hands and to get onto the ground in a prone position. Investigator Clark testified that he was also aware that Mitchell had a felony conviction for felon in possession of a firearm. When ordered to get on the ground, Jeremy Mitchell complied with the instructions and Investigator Clark put Mitchell into handcuffs for the purpose of detaining him. The investigators detained Mitchell and Mack in the residence because of concern for the safety of the situation. The investigators testified they did not know what was going on, that Mack had acted in a threatening manner at the door, and the investigators had information leading them to believe that Mitchell had a firearm and that there may be another firearm in the residence. While detained, Investigator Clark patted down Mitchell's outer clothing for safety purposes to ensure he did not have a gun or other weapon. When Investigator Clark started patting down Mitchell's outer clothing he felt a hard object in Mitchell's front pocket of his flannel jacket that was heavy and consistent with the feel of a firearm. Believing the item that he felt through Mitchell's front jacket pocket to be a firearm, Investigator Clark reached into the pocket to remove the firearm. Investigator Clark removed from Mitchell's front pocket a fully loaded magazine for a firearm and a holster that had a Kel-Tec .380 firearm in it. The firearm was black and silver in color and bore the serial number of KMZ42. When investigator Clark ran Mitchell's name and identifiers through radio dispatch, he was notified that Mitchell was on parole for possession of a firearm.

  Jeremy Mitchell told investigators that the firearm in his pocket wasn't his and that it belonged to his girlfriend, Tiffany Peterson, who had purchased it legally. Investigator Collie followed up on this information with Tiffany Peterson who was also inside the residence at 212 Texas Avenue at the time the investigators made entry. Tiffany Peterson was asked if she had any firearms in the residence. She responded yes that in the upstairs of the duplex she had a firearm that was locked up. Tiffany Peterson showed Investigator Brinton and another investigator the upstairs location to which she was referring. When the officers went upstairs no firearm was located, rather what Peterson had was paperwork showing she was in the process of purchasing a firearm. The paperwork was not complete.

  Subsequent to the commotion inside the duplex, the investigators searched the area where Lay was taken into custody and the adjacent area where Lay was seen possibly throwing

5

Case 5:17-cr-06010-DGK     Document 37     Filed 05/15/18     Page 5 of 10

something from his hand after he saw the investigators but before he was taken into custody. In the area where Lay was seen possibly throwing an object from his hand, Investigator Brinton located a Charter Arms pink revolver. The pink revolver was found on the other side of a short white picket fence about five to seven feet from where Lay was taken into custody.

## Discussion

Defendant Mitchell argues that his Fourth Amendment rights were violated when the police made a warrantless entry into the duplex at 212 Texas Avenue where he was staying. Defendant Mitchell argues that the police entered the duplex with no probability that contraband or other evidence of a crime would be found within, but rather, entered as part of an investigation to identify the occupants. Defendant Mitchell argues that neither probable cause nor exigent circumstances existed to support the police's warrantless entry. Defendant asserts that the police should have obtained a search warrant before entering the residence at 212 Texas Avenue. Defendant argues that the police had time to obtain a search warrant for the residence at 212 Texas Avenue but chose not to do so.

The Government argues that officer safety justified the warrantless entry into 212 Texas Avenue. Specifically, the Government argues that the behavior of Lay subsequent to his arrest and the behaviors of a person inside the residence during the knock and talk, when combined with the information the investigators had as to likely firearms inside 212 Texas Avenue, constituted exigent circumstances supporting the warrantless entry into the 212 Texas Avenue residence.

### I. Fourth Amendment and Exigent Circumstance

"Generally, the Fourth Amendment requires the police to obtain a warrant before entering a home." United States v. Spotted Elk, 548 F.3d 641, 651 (8th Cir. 2008). Where police enter a defendant's house without a warrant the burden is on the prosecution to prove that the police acted pursuant to a valid exception to the warrant requirement. Id. One exception is that police are allowed to enter a home without waiting for a warrant in the face of certain exigent circumstances. Id. Exigent circumstances include threats to an individual's life, a suspect's imminent escape, the imminent destruction of evidence, or situations where there is a compelling need for official action and there is no time to secure a warrant. Radloff v. City of Oelwein, Iowa, 380 F.3d 344, 348 (8th Cir. 2004). A compelling need for action includes circumstances

where law enforcement officers have a "legitimate concern for the safety of themselves or others." United States v. Vance, 53 F.3d 220, 222 (8th Cir. 1995).

In this case, the exception to the warrant requirement at issue is exigent circumstances, specifically officer safety. Upon review of the cumulative facts in this case, the Court finds that exigent circumstances did exist and that Captain Collie and the other investigators were reasonable in believing they were in danger, and thus justified in entering the 212 Texas Avenue residence without a warrant in order to protect themselves from harm.

The relevant facts begin with the investigators' arrest of Justin Lay. Justin Lay was the original target of the investigators' actions in this case, and he was arrested outside of the residence of 212 Texas Avenue. Investigators had made specific plans not to enter the residence of 212 Texas Avenue and had waited until Lay exited the residence before arresting him. However, after Lay was arrested he began to make a commotion that brought the investigators' attention back to the residence of 212 Texas Avenue. After being arrested Lay began yelling back toward the 212 Texas Avenue residence for "Tiffany" in what appeared to be an attempt to get the attention and possibly assistance of "Tiffany," or another individual in the residence. These actions by Lay, who had just been arrested, to gain the attention and possibly the assistance of persons in the residence was the beginning of the investigators' officer safety concerns which later accumulated into an exigent circumstance.

This initial officer safety concern was amplified by the investigators' knowledge that there were likely firearms in the residence of 212 Texas Avenue. The firearm that Lay was reported to have had on his person was not found on him during the search incident to his arrest, and there was concern that the firearm may still be in the 212 Texas Avenue residence. The investigators also had knowledge that an unknown armed white male wearing a plaid jacket (Mitchell), who was reported to have been with Lay at 212 Texas Avenue, was still likely in the residence. Based on these safety concerns the investigators decided to conduct a knock and talk at the residence of 212 Texas Avenue in hopes of better assessing what was going on at the residence and with Lay's yelling for "Tiffany".

While there was a statement by Investigator Clark that he also considered the possibility of obtaining consent to search the 212 Texas Avenue residence as a result of the knock and talk, he testified this was not the primary purpose of the knock and talk. There is no evidence to support that anything improper was done in conducting the knock and talk. All investigators

7

testified that the primary reason for conducting the knock and talk was to look into the safety concerns that arose unexpectedly as a result of Lay's actions after his arrest. There is no evidence to support that the knock and talk was done in lieu of obtaining a search warrant with the intention of making a warrantless entry into 212 Texas Avenue. Additionally, even if the knock and talk was done with an ulterior motive of obtaining consent to search, "an ulterior motive does not render a search illegal in a situation where the officers have an objectively reasonable safety concern." United States v. Kuenstler, 325 F.3d 1015, 1022 (8th Cir. 2003).

Once the knock and talk started to proceed, the actions of the one individual (later identified as Joshua Mack) within the residence quickly escalated the situation into an exigent circumstance involving concerns of officer safety. The legitimacy of the exigent circumstance of officer safety is determined from the objective standpoint of what a reasonable experienced officer would believe. United States v. Poe, 462 F.3d 997, 1000 (8th Cir. 2006); United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003). Here, the evidence supports that the actions of Captain Collie and the other investigators were consistent with what a reasonable experienced officer would have done in this same context. The testimony of Captain Collie was that during the knock and talk the behaviors of Mack in yelling "Cops" and then running toward the back of the residence, when considered in conjunction with the information that led investigators to conduct the knock and talk in the first place, led him to believe that Mack was running toward the back of the residence in an attempt to go for a gun. Captain Collie testified he believed he had to immediately enter the residence and detain Mack and determine whether he had or was running for a gun. The other investigators who entered the residence with Captain Collie testified that their entrance into the residence was based on this same safety concern and the additional concern related to Captain Collie's entrance into the residence. The facts support the legitimacy of the application of the exigent circumstance of officer safety as an exception to the warrant requirement.

The Court notes that applying the exigent circumstance for officer safety does not require that the threat of harm, of which Captain Collie and the investigators were concerned, to have actually existed. Rather, the application of the exigency requires only that there was reasonable belief by Captain Collie and the other investigators that the threat of harm existed. See Radloff, 380 F.3d at 348 (application of exigent circumstance exception to the warrant requirement does not require that the threat of harm actually existed, rather there need only be a

reasonable belief that the threat of harm existed). Therefore, the facts that occurred after the warrantless entry by Captain Collie and the other investigators are immaterial to the issue of whether the exigent circumstance of officer safety is properly applied. Such immaterial facts include no gun being found on Mack after he was detained and patted down, and Lay's gun not being found within the residence.

Defendant Mitchell's argument that Captain Collie and the investigators had time to obtain a warrant but chose not to do so, fails in light of the exigent circumstance on which the investigators made entry. Concerns of imminent officer safety are not conducive to taking the time to obtain a search warrant for a residence. The investigators testified that based on the information they had received in conjunction with the events that were unfolding after the arrest of Lay and the knock and talk, that they had every reason to believe that the persons in the residence had firearms and that the male subject (Mack) who yelled "Cops" and began running to the back of the residence was running to obtain a firearm. There is no reasonable basis on which to assert that the officers should have taken the time to obtain a search warrant for the residence.

## Conclusion

The Court finds that the prosecution has met its burden of showing the exigent circumstance of officer safety supported the warrantless entry into the residence of 212 Texas Avenue. The cumulative of facts support that Captain Collie and the other investigators had a reasonable fear of danger and harm, and their concerns for officer safety was an exigent circumstance which justified their warrantless entry into 212 Texas Avenue. See United States v. Kuenstler, 325 F.3d at 1021 (holding that officers' concerns for their safety justified the warrantless entry of a residence after a man resisted arrest outside the residence, a woman ran down the driveway screaming at officers, another woman stood in the doorway of the residence and the officers knew there might be a drug lab in the residence); United States v. Vance, 53 F.3d at 222 (Exigent circumstances found because "[t]he officers' safety concerns were reasonable because he had been briefed beforehand that there were other individuals and weapons in the house, and he could have reasonably feared that the unidentified man was entering the house to obtain a weapon."). See also United States v. Hill, 430 F.3d 939, 941 (8th Cir. 2005) ("Unexpected and dangerous events that arise during an arrest can create exigent

circumstances that justify law enforcement officers enter in a residence in order to protect themselves from any additional and unknown threats.").

The pat down searches of the persons in the residence after the investigators made entry into the residence were also proper in order to protect officer safety. See United States v. Henderson, 553 F.3d 1163, 1165 (8th Cir. 2009) ("[O]fficers who have a legitimate concern for their safety or for the safety of others may search areas that may conceal a threat to them without a warrant."). See also Terry v. Ohio, 392 U.S. 1 (1968) (where a reasonably prudent officer is warranted in the circumstances of a given case in believing that his safety or that of others is endangered, he may make a reasonable search of the outer surfaces of the clothing of an individual believed to be armed and dangerous. This search can be conducted regardless of whether the officer has probable cause or the absolute certainty that the individual is armed.). The evidence meriting the warrantless entry into the residence at 212 Texas Avenue, also justified the investigators patting down the occupants of the residence to determine if they had a firearm. Officer Clark's pat down search of Mitchell's outer clothing which led to the discovery of the Kel-Tec .380 semi-auto handgun in the outer front breast pocket of defendant Mitchell's outer coat jacket was a proper pat down search that did not violate his rights.

The Court finds defendant Mitchell's Fourth Amendment rights were not violated by the investigators' warrantless entry into the residence of 212 Texas Avenue or by the subsequent pat down search of defendant Mitchell's outer clothing.

IT IS THEREFORE, RECOMMENDED that defendant Jeremy Mitchell's motion to suppress evidence and any related statements be denied. (Doc. 23).

The parties have fourteen days from the date of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 11th day of May, 2018, at Kansas City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge